## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BETTY COOPER, et al.,**<br><br>　　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**THE HARTFORD FINANCIAL**<br>**SERVICES GROUP, INC.,**<br><br>　　　　　　**Defendant.** | **Civil Action 04-00383 (HHK)** |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, an estate and eight individuals, seek to hold defendant, The Hartford Financial

Services Group, Inc. ("Hartford"), an investment and insurance company, liable for $200,000 on

a bond Hartford issued to cover liability imposed on First Government Mortgage and Investors

Corp. ("First Government"), a mortgage lender against which plaintiffs hold a judgment in

excess of $4 million.  Before the court are the parties' cross motions for summary judgment.

Upon consideration of the motions, the oppositions thereto, and the record of this case, the court

concludes that both motions must be granted in part and denied in part.

## I.  BACKGROUND

In 1996, First Government applied for a mortgage license.  In order to satisfy licensing

requirements and the District of Columbia Mortgage Lender and Broker Act of 1996, D.C. Code

§ 26-1101 *et seq.*, ("MLBA"), First Government purchased a bond from Hartford in the amount

of $50,000.  Thereafter, in exchange for an annual payment of $500, Hartford re-issued the bond

each year for the next four years until First Government ceased doing business in 2001.[1]  *Compl.* ¶ 17.

In 2000, plaintiffs sued First Government alleging that it had violated various federal and District of Columbia consumer protection laws that govern mortgage lenders.[2]  They succeeded in winning a jury verdict against First Government in the amount of $4.125 million in punitive damages, $543,734.25 in attorneys' fees, and compensatory and statutory damages in varying amounts for each plaintiff.[3]  Plaintiffs now seek to recover $200,000 on Hartford's bond.

## II. ANALYSIS

As plaintiffs point out, the resolution of this case turns on "whether Hartford is liable for $50,000 in each of the four years covered by [the bond it issued to First Mortgage] or whether its liability is limited to the amount in the bond for a single year . . . ."  Pls.' Mot. at 1.  The court's resolution of the issue, in turn, depends on whether the bond issued by Hartford, along with its

---

[1]     Hartford re-issued the bond for the following periods: November 11, 1997, to November 10, 1998; November 11, 1998, to November 10, 1999; November 11, 1999, to November 10, 2000; and November 11, 2000, to November 10, 2001.

[2]     Plaintiffs causes of action against First Government were based on the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and a corollary D.C. statute, D.C. Code § 28-3301 *et seq.,* the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639, the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.,* and the D.C. Mortgage Lender and Broker Act of 1996, D.C. Code § 26-1101 *et seq.*  They prevailed on their causes of action based on the Truth in Lending Act and the Consumer Protection Procedures Act.

[3]      First Government filed for Chapter 11 bankruptcy on February 16, 2001, which caused plaintiffs' case to be stayed.  The bankruptcy court lifted this stay on May 28, 2002, to permit plaintiffs to pursue their claims against First Government to the extent that they could recover on the bond issued by Hartford.  Judgment was entered in plaintiffs' favor on April 10, 2003.

subsequent renewals, is a "continuous bond" or a "cumulative bond."  If the bond is continuous,

Hartford's liability is only the face value of the original bond, $50,000, regardless of how many

years the bond was in effect.  If, on the other hand, the bond is cumulative, Hartford is liable for

up to $50,000 for each year the bond was in effect and plaintiffs can demonstrate they suffered

losses.[4]

Plaintiffs' primary argument is that because the bond at issue is "statutory," one required

by law for the protection of the public, it must be construed to be cumulative.[5]  Hartford

disagrees, contending that even though its bond is "statutory," the language of the bond itself and

---

[4]    There is no uniform rule that governs whether a bond like the one issued by
Hartford is cumulative or continuous.  Rather, courts have looked to a number of different factors
to make this determination, and their conclusions vary.  *See, e.g., Columbia Hospital for Women
and Lying-In Asylum v. United States Fidelity and Guaranty Co.*, 188 F.2d 654 (D.C. Cir. 1951)
(finding a private bond to be continuous due to express language against cumulation in bond);
*ABS Clothing v. Home Insurance Company*, 41 Cal. Rptr. 2d 166 (Cal. Ct. App. 1995) (finding a
private bond to be cumulative where policy provisions did not support a finding that the bond
was continuous); *Giese v. Engelhardt*, 175 N.W.2d 578 (N.D. 1970) (finding a statutory bond to
be cumulative where legislative intent was for cumulative liability); *National Grange v Prioleau*,
236 S.E.2d 808 (S.C. 1977) (finding a statutory bond to be continuous where the bond explicitly
stated as much and the legislature intended it to be continuous).

[5]    A number of courts have recognized the distinction between private and statutory
bonds and noted its importance in determining whether the bond is continuous or cumulative.
*See Giese*, 175 N.W. 2d at 586 (noting that "these cases pertain to bonds issued for the protection
of a single specific obligee, and are, therefore, distinguishable from the case at hand which
pertains to a surety bond required by statute for the protection of the public"); *Royal Indemnity
Company of New York v. Business Factors, Inc.,* 393 P.2d 261, 263 (Ariz. 1964) ("Where the
state sets up an annual licensing system and requires a bond for the protection of the public, the
bonds must be construed as giving protection for their full face amount for each year that they are
in force, and any provision in the bond attempting to limit this liability is a nullity."); *General
Electric Credit Corp. v. Wolverine Ins. Co.,* 362 N.W.2d 595, 604 (Mich. 1985) ("The legislative
purpose in requiring a yearly bond is to provide protection to the general public.  An
interpretation of the statute which provides only limited or static protection would defeat the
legislative purpose in enacting the statute.").

the text of the MLBA show that it is continuous.  Plaintiffs' have the better argument.[6]

## A.  Interpreting the Bond

A bond is a contract and is to be interpreted in accordance with established rules of

contract construction.  *United States v. Insurance Company of North America,* 131 F.3d 1037,

1041-42 (D.C. Cir. 1997).  In instances where a bond is mandated by statute, the provisions of

the statute are to be read into the bond.  *Speir v. United States*, 31 App. D.C. 476, 483 (D.C. Cir.

1908) ("the statutory condition must be considered as read into and made a part of the bond").  In

addition, the bond must be construed in light of the purpose of the statute.  *United States v.*

*American Surety Co.,* 200 U.S. 197, 205 (1906) (holding that the bond must be read in light of

"the declared purpose of the statute").  Hence, whether a statutory bond is continuous or

cumulative is determined by whether the statute and the bond, construed as a whole, indicate an

intention that liability should be limited to the amount of the original bond or extended each time

the bond is renewed.

### *1. The Language of the Hartford bond*

Hartford contends that the language of its bond indicates that it is continuous.[7]  For

---

[6]     The law to be applied in considering the parties' cross motions for summary
judgment is familiar.  Under FED. R. CIV. P. 56, summary judgment shall be granted if the
"pleadings, depositions, answers to interrogatories, admissions on file and affidavits" show that
there is no genuine issue of material fact in dispute and that "the moving party is entitled to
judgment as a matter of law."  Material facts are those "that might affect the outcome of the suit
under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]     Hartford relies heavily on *Columbia Hospital for Women and Lying-In Asylum v.*
*United States Fidelity and Guaranty Co.*, 188 F.2d 654 (D.C. Cir. 1951).  Hartford's reliance on
this case is misplaced.  *Columbia Hospital* involved a private bond that was "entered into at
arm's length by fully competent parties" who had the option of negotiating the terms of the bond
to protect their interests.  *Id.* at 659.  It also contained express provisions against cumulative
liability, which the court found to be so "direct and positive" on its face that it was clearly

example, Hartford points to a provision that states, "[t]his obligation may be continued by an

appropriate renewal certificate in support of licenses issued for subsequent years." Pls.' Ex. 4;

Def.'s Ex. B. Hartford argues that "this " means that it is a single obligation intended to extend

for multiple years and "continued" demonstrates the D.C. Council's intention for the bond to be

continuous. Def.'s Opp'n at 7. Hartford's argument is unpersuasive for two reasons. First, as

Hartford has conceded, statutory bonds must be read in light of the governing statute. When so

read, "this obligation" refers simply to the general requirement in the MLBA for all licensees to

have a bond, D.C. Code § 26-1103(a), and "continued" indicates only that the bond may be

renewed, *id.* § 26-1103(i), not that it is a continuous bond.

Second, and more important, Hartford's bond states "[t]his obligation is issued under and

is governed by District of Columbia Code 26-1003(i) and the obligations of the surety shall be

those therein set forth."[8] Pls.' Ex. 4. In cases involving statutory bonds, courts have determined

that "the obligation of a bonding company is determined by the statute, and not by the wording of

the bond." *Royal Indemnity*, 393 P.2d at 262. This is particularly the case when, as here, the

precise language of the bond expressly states that the terms of the statute control. Accordingly,

the court now turns to the MLBA.

---

continuous. *Id.* Further, Hartford's argument that "[t]he *Columbia Hospital* court found the
most significant feature of the bond to be that it did not specify a termination date and held that a
[sic] such a bond is presumed to be continuous," Def.'s Opp'n at 4, does not withstand scrutiny.
While the court in *Columbia Hospital* found the absence of a specified termination date of the
bond to be a matter to be considered in determining whether the bond at issue was continuous or
cumulative, it was not the "most significant feature of the bond." *Id.* at 657. Rather, it was one of
three provisions of the contract that, read as a whole, led the court to conclude that the bond was
continuous. *Id.* at 658.

[8]      D.C. Code § 26-1103 was formerly D.C. Code § 26-1003.

*2. The MLBA*

The MLBA was enacted to protect D.C. homeowners from "abuses in the mortgage industry."  Council of the District of Columbia Report on Bill 11-637, "The District of Columbia Mortgage Lender and Broker Act of 1996," May 31, 1996, at 1-2 ("Leg. Hist.").  Anyone engaging in business as a mortgage lender or broker must be licensed under the MLBA, D.C. Code § 26-1103(a), and applicants must post a surety bond as a condition to obtaining or renewing a license, *id.* § 26-1103(i).  The original draft of the legislation called for a $5,000 bonding requirement, but this was ultimately replaced with a sliding schedule because the D.C. Council was concerned that the amount of the bond be "an adequate amount to protect the interests of injured borrowers."  Leg. Hist. at 7.  Now, the amount of the bond is determined by "the total dollar amount of mortgage loans applied for, procured, or accepted" by the lender during the previous calendar year, and it is to be reassessed annually.  D.C. Code § 26-1103(i)(3).

The language of the MLBA and its legislative history make clear that the purpose of the bond requirement is to provide recourse for borrowers who are damaged by a licensee's noncompliance with the statute and other applicable laws.[9]  It is undisputed that plaintiffs, whom

---

[9]     A similar statute was found to be cumulative for precisely this reason in *Metropolitan Casualty Co. of N.Y. v. Billings*, where the court stated:

> The legislature could hardly have intended such inadequate protection for the public.  When the statutory provisions requiring the posting of a bond by each applicant for a license, making the posting of a bond a condition precedent to the issuance of any license, and making it necessary to renew annually any license issued are read together, as they must be, the legislative intent that the bond carry an annually cumulative liability is obvious.  Any other interpretation would defeat the purpose of this remedial legislation.

192 A.2d 541, 544 (Conn. 1963) (internal citations omitted).

a jury found to be victims of First Government's predatory lending scheme, Pls.' Ex. 1, fall squarely into the category of individuals the MLBA was attempting to protect.

In the face of the MLBA's purpose to protect D.C. homeowners, a purpose that obviously would be served better were the bond it requires to be construed to be "cumulative," Hartford asserts that the language of the MLBA compels the conclusion that the bond is continuous. Hartford first finds significance in § 1103(i)(1)(D), which states that the surety bond shall "[b]e continuously maintained thereafter for as long as any license issued under this chapter remains in force." Hartford argues that "any license issued under this chapter" indicates the bond was intended to apply to more than one license. Def.'s Opp'n at 9. The court disagrees. It is generally accepted that "the literal words of a statute . . . are 'to be read in light of the purpose of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice.'" *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C. 1999) (quoting *Metzler v. Edwards*, 53 A.2d 42, 44 (D.C. 1947)). Looking at the MLBA as a whole, it is clear that one of its primary purposes is to require mortgage lenders and brokers to have a license at all times. It is equally clear that each license must be accompanied by a bond, and each license may last no longer than one year. The far more reasonable interpretation of the requirement that the surety bond shall "[b]e continuously maintained thereafter for as long as any license issued under this chapter remains in force," therefore, is simply that a mortgage lender or broker must at all times have both a license and a bond. Therefore, "continuously," rather than signifying a continuous bond, is simply a modifier of the verb "maintained." Similarly, the term "any license" merely emphasizes that both original and renewal licenses must be accompanied by a bond.

7

Hartford also finds significance in § 1103(i)(5), which reads "[a]ny person who may be damaged by noncompliance of a licensee with any condition of such bond may proceed on such bond against the principal or surety thereon, or both, to recover damages. The aggregate liability under the bond shall not exceed the penal sum of the bond." The words "aggregate liability" cannot bear the weight Hartford would have them carry. These words logically mean that, while an injured party may proceed against both the principal and the surety, she may not recover the full amount of the bond from both of them individually. In other words, both entities are jointly and severally liable for the full amount of the bond. Hartford's position that "aggregate liability" limits its liability to $50,000 again demonstrates its failure to consider the language of the statute in context.[10] The Hartford bond uses "aggregate liability" in the same section that explains that an injured person may sue multiple parties for relief. "Aggregate liability" therefore refers to the fact that both the lender and the surety company are liable, it is not referring to what type of bond was issued. *See, e.g., General Electric Credit Corp. v. Wolverine Ins. Co.,* 362 N.W.2d 595, 603 (Mich. 1985) (holding that use of the term "aggregate liability" must be read in context of the statute and does not necessarily mean the bond is continuous).

While the MLBA does not contain language that expressly states that the bond it requires is either continuous or cumulative, it contains two provisions that lend support for plaintiffs' position that Hartford's bond is cumulative. First, § 26-1103(i)(3) requires the value of the bond

---

[10]     Hartford cites a number of cases that have interpreted "aggregate liability" to mean that liability is limited across bond periods to the face value of the bond. *See, e.g., Massachusetts Bonding & Ins. Co. v. Julius Seidel Lumber Co.,* 279 F.2d 861 (8th Cir. 1960); *New York Casualty Co. v. Ford*, 145 F.2d 599 (5th Cir. 1944); *Michigan Mortgage-Investment Corp. v. American Employers' Ins. Co.*, 221 N.W. 140 (Mich. 1928). However, none of these cases uses the term "aggregate liability" in the same context as the MLBA, and none of them involve a statutory bond.

to be re-assessed annually based on the amount of loans the mortgage lender has procured.  That the value of the bond can change on a yearly basis is a strong indication that it is meant to be a separate contract every year.  Second, § 26-1103(h) requires that "[f]or *each* license for which an applicant applies, the applicant shall: (1) Submit a *separate* application; (2) Pay a *separate* license fee; and (3) File a *separate* surety bond."  (Emphasis added).  These requirements apply to both original and renewal licenses, which means that every year, every person applying for either an original or a renewal license must submit an application, pay a fee, and file a bond.  Because this one-year licensing term is supplied by the MLBA, it is incorporated into the bond.  While the fact that the license expires every year does not automatically signify that the bond must terminate every year as well, the explicit requirements that the fee and the bond be re-filed along with the license do suggest that the bond, like the license, was meant to be cumulative.[11]  Having determined that the bond is cumulative, the court will now determine the amount to which plaintiffs are entitled to recover on the bond.

## B.  Damages

Hartford issued five bonds to First Government, each in the amount of $50,000, to cover damages incurred during a specified year.  Plaintiffs contend that they are entitled to recover

---

[11]      It is useful to point out that while First Government chose to renew its bond every year with Hartford, the MLBA did not by any means require First Government to renew the bond with the same company each year.  Had First Government chosen to obtain a bond from a different company in any or every year, there would have been no question that bonds from different companies would be considered separate obligations.  As some courts have recognized, "the fact that [defendant] chose to do business with his original bonding company does not decrease the protection to the public for each year as required by the statute."  *Royal Indemnity,* 393 P.2d at 263; *see also Giese,* 175 N.W. 2d at 586.

$200,000 for damages that accrued from 1997 to 2000.[12]  Because the court has determined that

Hartford issued a cumulative rather than a continuous bond, plaintiffs must demonstrate that they

incurred damages in each year the bond was in place.[13]  *See Columbia Hospital,* 188 F.2d at 657;

*A.B.S. Clothing Collection, Inc., v. Home Insurance Company*, 41 Cal. Rptr. 2d 166, 169 (Cal.

Ct. App. 1995).

    *1. Actual Damages*

    Plaintiffs assert that four of them entered into mortgage loans with First Government in

Year 1. The loans plaintiffs took out in Year 1 totaled $140,104.00.[14]  Plaintiffs assert that the

remaining five of them entered into loans with First Government in Year 2, and those loans

amounted to $135,944.[15]  These assertions, set forth in plaintiffs' statement of material facts not

in dispute, are not controverted.  They are, therefore, assumed to be true.  LCvR 7(h) ("In

determining a motion for summary judgment, the court may assume that facts identified by the

---

[12]    Plaintiffs do not allege that they incurred any damages during the time period covered by the original bond, which was in effect from November 11, 1996, to November 10, 1997.

[13]    For ease of reference, the time period of November 11, 1997, to November 10, 1998, will be referred to as "Year 1," and each subsequent one-year period will be referred to as "Year 2," Year 3," and Year 4."

[14]    Lesslie Pittman took out a loan of $21,685 on February 4, 1998; Paula Johnson took out a loan of $22,238 on February 17, 1998; Margaret Burnett took out a loan of $57,522 on March 24, 1998; and Doris Lucas took out a loan of $38,659 on May 29, 1998.  Pls.' Statement at 1-2; Pls.' Ex. 1; Pls.' Reply at 22-23.

[15]    Josephine Curtis took out a loan of $10,015 on January 29, 1999; Betty Cooper took out a loan of $29,220 on March 15, 1999; David Johnson took out a loan of $16,638 on May 12, 1999; Bertha McKnight took out a loan of $42,449 on May 21, 1999, and Eugenie Duncan took out a loan of $37,662 on July 30, 1999.  Pls.' Statement at 1-2; Pls.' Ex. 1; Pls.' Reply at 23.

moving party in its statement of material facts are admitted, unless such a fact is controverted in

the statement of genuine issues filed in opposition to the motion."). Accordingly, plaintiffs are

entitled to recover $100,000, the maximum amount of the bond, for Years 1 and 2.

   *2. Statutory Damages*

   Plaintiffs allege that they incurred statutory damages of $18,000 in Year 3 and $8,000 in

Year 4 because First Government failed to timely rescind plaintiffs' loan agreements in violation

of the Truth in Lending Act.[16]   Hartford does not dispute that plaintiffs were awarded statutory

damages in the aforementioned amounts. Rather, Hartford contends that statutory damages are

the functional equivalent of punitive damages and that sureties on statutory bonds can not be held

liable for punitive damages. Def.'s Reply at 5. Hartford's ipsit dixit argument cannot be

sustained. *See Molzof v. United States,* 503 U.S. 301, 306 (1992) (rejecting the argument that

"damages awards that may have a punitive effect" are the same as "punitive damages"). Hartford

has not cited any authority, and the court is not aware of any, that equates statutory and punitive

damage awards. As plaintiffs point out, the two types of damages serve different purposes.

"Statutory damages are awarded to compensate a plaintiff for unlawful actions by a defendant

where the injury is non-pecuniary or difficult of calculation." Pls.' Sur-Reply at 6. Punitive

damages on the other hand, "are awarded to punish a defendant for particularly egregious

conduct, and to serve as a deterrent to future conduct of the same type." *Cronin v. Islamic*

*Republic of Iran*, 238 F.Supp. 222, 235 (D.C. Cir. 2002). The Truth in Lending Act makes no

---

[16]      Any creditor who fails to comply with the Truth in Lending Act is liable to the
injured person for "any actual damage sustained by such person as a result of the failure," 15
U.S.C. §1640(a)(1), as well as, under certain circumstances, the finance charges and attorneys'
fees associated with various transactions. *Id.* at §1640(a)(2)-(4).

mention of punishing creditors, and it leaves no room for discretion in awarding damages. *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 250 (3rd Cir. 1980) ("once the court finds a violation, no matter how technical, it has no discretion with respect to liability") (quoting *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976)).  It simply sets up a system of strict liability whereby a creditor who fails to comply with the Act in any respect is liable to the consumer for a pre-determined amount, regardless of the nature of the violation or the creditor's intent.  Furthermore, the MLBA provides that "[a]ny person who may be damaged by noncompliance of a licensee with any condition of such bond may proceed on such bond against the principal or surety thereon, or both, to recover damages."  D.C. Code § 26-1103(i)(5).  Plaintiffs were indeed damaged by First Government's noncompliance, and the statutory damages were awarded to address that very injury.  Plaintiffs therefore are entitled to recover $26,000 on Hartford's bond for their statutory damages.[17]

### 3. Attorneys' Fees

The court next determines whether plaintiffs may recover what is left of the Hartford bond in Years 3 and 4 for their attorneys' fees in the amount of $543,734.25.  The MLBA states that "[a] borrower aggrieved by any violation of this section shall be entitled to bring a civil suit for damages, *including reasonable attorney's fees*, against the lender."  D.C. Code § 26-1113(b)(3) (emphasis added).  Hence, when the MLBA states that an injured party may proceed

---

[17]     Margaret Burnett, Betty Cooper, Doris Lucas and Lesslie Pittman rescinded their loans on May 18, 2000, and were each awarded $2,000 in statutory damages; David Johnson and Bertha McKnight rescinded their loans on May 18, 2000, and were each awarded $4,000; Eugenie Duncan rescinded her loan on November 15, 2000, and was awarded $4,000; Paula Johnson rescinded her loan on November 15, 2000, and was awarded $2,000; and Josephine Curtis rescinded her loan on December 6, 2000, and was awarded $2,000.  Pls.' Statement at 2.

on the bond to "recover damages," D.C. Code § 26-1103(i)(5), those damages necessarily include attorneys' fees because all sections of the same statute must be read in accordance with one another. *See Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.,* 468 U.S. 207, 219 (1984) (holding that the same terms used in different sections of a statute are to be interpreted consistently).

While plaintiffs are entitled to recover for their attorneys' fees, Hartford asserts correctly that there is a dispute of material fact as to whether the attorneys' fees for which plaintiffs seek to recover were incurred in Year 3 or Year 4. Plaintiffs state that "[t]he Court entered judgment for plaintiffs' attorneys' fees in the amount of $543,734.25. This judgment covered attorney hours spent prosecuting plaintiffs' claims from November 1999 - March 2003." Pls.' Statement ¶ 33. Plaintiffs also allude to detailed billing records that were submitted in their previous litigation against First Government and suggest that this court "take judicial notice of the records . . . or, alternatively, plaintiffs can resubmit them in this action . . . though we do not believe that should be necessary." Pls.' Sur-Reply at 9. Plaintiffs are wrong. The court has no basis for determining that they incurred $74,000 in attorneys fees in years 3 and 4. Because there is a dispute of material fact, summary judgment on this issue must be denied.

*4. Punitive Damages*

Finally, the court must determine whether plaintiffs may recover any amount of the bond for their $4.125 million punitive damages award.[18] Sureties on statutory bonds are not liable for

---

[18]     Plaintiffs argue that the court should look to both the language of the bond and the MLBA to determine whether punitive damages are warranted; however, as the court previously noted, Hartford's bond explicitly states that the terms of the statute control. Pls.' Ex. 4 ("This obligation is issued under and is governed by District of Columbia Code 26-1003(i) and the

punitive damages unless the statute explicitly imposes such liability.  *See Butler v. United Pacific Insurance Co.,* 265 Ore. 473, 474-75 (Ore. 1973) (citing 11 Appleman, Insurance Law and Practice, § 6361, p. 86 (1944) ("[A] surety is liable only for the payment of actual damages caused by the principal, and may not be held for exemplary or punitive damages, in the absence of any statutory provision imposing such liability.")); *see also The New Hampshire Insurance Company v. Gruhn*, 99 Nev. 771, 772 (Nev. 1983) ("To determine the scope of the coverage, we look to the language and purpose of the bond, and in doing so, to that of the statute."); *Harper v. Home Insurance Company*, 533 P.2d 559, 560 (Ariz. App. 1975) ("[T]he surety is liable only for the payments of actual damages caused by the principal and is not liable for punitive damages in the absence of any statutory provision imposing such liability").  The MLBA states, in relevant part, "[a]ny person who may be damaged by noncompliance of a licensee with any condition of such bond may proceed on such bond against the principal or surety thereon, or both, to recover damages."  D.C. Code § 26-1103(i)(5).  The implication of providing relief for individuals who "may be damaged" is that a person may recover damages to compensate her only insomuch as the damages actually relate to her injury.  Punitive damages do not relate to the type or extent of damage endured by the individual to whom they are awarded.  By definition, punitive damages are imposed against a wrongdoer for the sole purposes of punishment and deterrence.  The MLBA only compensates individuals to the extent that they "may be damaged." It therefore does not allow for recovery based on an award of punitive damages.  *See Harper*, 533 P.2d at 560 (holding that a statute allowing for recovery by "any person [who] suffers any loss or damage"

---

obligations of the surety shall be those therein set forth.").  Therefore, the MLBA governs the resolution of this issue.

14

did not allow for punitive damages because one cannot be said to "suffer" punitive damages).

## III.  CONCLUSION

For the aforementioned reasons, it is this 9th day of June, 2005, hereby

**ORDERED** that the motions for summary judgment are granted in part and denied in part as set forth in this Memorandum Opinion.

Henry H. Kennedy, Jr.
United States District Judge